UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20491-CIV-ALTONAGA

**ISIDORO HERNANDEZ**,

    Plaintiff,

vs.

**PUBLIX SUPER MARKETS, INC.**,
*et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Isidoro Hernandez's ("Hernandez[']s") Motion for Remand ("Motion") [ECF No. 5], filed February 20, 2014. The Court has carefully reviewed the Motion and its supporting exhibits (*see* [ECF No. 7]); the Response filed by Defendant, Carlos Cendoya ("Cendoya") ("Cendoya's Opposition") [ECF No. 13]; a separate Response filed by Defendant, Publix Super Markets, Inc. ("Publix") ("Publix's Opposition") [ECF No. 14]; almost identical Replies [ECF Nos. 17 & 18] filed by Hernandez to Defendants' two response memoranda; and applicable law. For the reasons that follow, the Court grants the Motion to Remand.

### I.    BACKGROUND[1]

Hernandez worked for Publix from 1985 to 2013, ending his tenure there as a meat manager. (*See* Compl. ¶¶ 7–8). Cendoya was a District Manager for Publix and superior in rank to Hernandez. (*See id.* ¶ 37). Hernandez's unblemished work record at Publix changed after he

---

[1] The facts are taken from Plaintiff's state court Complaint [ECF No. 6-2].

began complaining about conduct he believed violated a law, rule, or regulation, and which actually violated a law, rule, or regulation. (*See id.* ¶ 10).

The United States Department of Agriculture ("USDA") regulates food and food safety through its Food Safety Inspection Services ("FSIS"). (*See id.* ¶ 11). USDA regulations, enforced by the FSIS, require all meat products to be inspected and each meat product be subject to a specific date by which it must be sold by the store or used. (*See id.* ¶ 12). A "sell by" date indicates to the store how long to display a product for sale and how long it is safe for consumption. (*See id.* ¶ 13). The "use by" date is the last day the meat product may be safely cooked and consumed. (*See id.* ¶ 14). In response to concerns regarding foodborne bacteria and other pathogens, USDA regulations require abiding by designated "sell by" and "use by" dates of meat products. (*See id.* ¶¶ 12, 17).

According to the FSIS, misbranded products are required to be reported to the District Office within twenty-four hours of determining a misbranded meat product was received by or originated from the official establishment. (*See id.* ¶ 19). The twenty-four-hour period begins once Publix has reason to believe a product in commerce is adulterated or mislabeled under the Federal Meat Inspect Act or the Poultry Products Inspection Act. (*See id.* ¶ 20). Official establishments such as Publix are required to provide the FSIS District Office with the type, amount, origin, and destination of adulterated or misbranded products under Publix's direct control pursuant to federal regulation. (*See id.* ¶ 21). The Federal Trade Commission also prohibits unfair and deceptive packaging and labeling. (*See id.* ¶ 22). Last, Chapter 500 of the Florida Statutes also regulates food product safety: the retail sale of meat is defined and specifically regulated by Florida statute; Florida delegates responsibility for meat safety to the

Florida Department of Agriculture and Consumer Services; and it is a misdemeanor to violate any provision of Chapter 500. (*See id.* ¶¶ 23–28).

At times, Hernandez witnessed the Publix warehouse shipping or delivering meats that would arrive completely "out of date," meaning the meat could not be sold or consumed. (*See id.* ¶ 36). On December 13, 2012,[2] while Hernandez was working at Publix store number 91, the store received a delivery of 1,100 pounds of meat scheduled to go "out of date" December 26, 2012. (*See id.* ¶¶ 38–41). In addition to the 1,100 pounds of meat being "short dated," the volume of meats delivered far exceeded the store's historical sales for December. (*See id.* ¶ 42). Hernandez expressed his concerns to the store manager, Haydee Gonzalez ("Gonzalez"), and she told Cendoya, but Cendoya ignored Hernandez's concerns. (*See id.* ¶ 43). Despite Hernandez's "herculean effort" selling nearly 400 pounds of the meat, approximately 700 pounds of meat went "out of date." (*Id.* ¶ 45). Cendoya called Grocery Manager "Leo" to offer out of date products and then asked Hernandez to sell the "out of date" meat to other Publix employees at a deep discount and for cash. (*See id.* ¶ 46).

On December 27, 2012 another meat manager from Publix store 581 came to store 91 and took a box of meat for Cendoya. (*See id.* ¶ 47). Hernandez objected and refused to participate in any act that would result in the sale of "out of date" meats. (*See id.* ¶ 48). On December 29, 2012, Hernandez also complained to the Grocery Manager at store 91. (*See id.* ¶ 49). Undeterred, Cendoya took the remaining meat and sold it to Publix employees for cash for his own personal gain. (*See id.* ¶¶ 50, 79). The warehouse continued sending "short dated" meats to store 91, and Hernandez again complained to Gonzalez, who, "as usual," failed to do anything. (*Id.* ¶ 52).

---

[2] The Complaint mistakenly identifies the year as 2013. (*See id.* ¶ 38).

When Hernandez returned to work in mid-January 2013 after taking two days off, he discovered his assistant meat manager altering "sell by" dates on meats and placing the "out-of-date" meats back on the shelf with altered dates on the packaging, a practice known as "back dating" or as giving the product an "extended date." (*See id.* ¶ 54). Hernandez remedied the situation, and informed Gonzalez, who sent Publix's Retail Improvement Specialist Pete Chinea ("Chinea") to conduct a random inspection; Chinea confirmed what the assistant manager had done. (*See id.* ¶¶ 55–56). After Hernandez objected and refused to sell the "out of date" meat, Cendoya told Hernandez, "you are no[] longer my meat manager; I want you out of my district." (*Id.* ¶ 57 (alteration added)).

Indeed, Cendoya did not discipline the assistant manager but instead disciplined Hernandez "for the first time in twenty-eight years of employment" for allowing the placement of "back dated food." (*Id.* ¶ 58 (internal quotation marks omitted)). On January 31, 2013, Hernandez was counseled and written up. (*See id.* ¶ 59; Ex. A). In reality, Hernandez was being targeted and retaliated against by Cendoya for objecting and refusing to participate in Cendoya's violation of rules, regulations, and laws. (*See id.* ¶ 60). As part of the discipline, Hernandez was transferred to a lower volume store (number 1003) with poorer sales performance six miles farther from his home than store 91, resulting in a significant pay decrease of approximately $10,000 a year. (*See id.* ¶¶ 62–65).

At the new store, on February 2, 2013, Hernandez found "out of date" merchandise and observed meats being sold thirteen days past due. (S*ee id.* ¶ 66). Although store 1003 had been selling out of date meat product as a regular practice prior to his arrival, Hernandez immediately stopped the practice. (*See id.* ¶¶ 69–70). On April 3, 2013, Hernandez sent several people emails complaining about store 1003 and the ongoing issues of "short dated" meat. (*See id.* ¶

76). The backdating of meat was done at Cendoya's request so his stores in South Florida would appear more profitable. (*See id.* ¶¶ 78, 80). From 2011 through February 16, 2013, the USDA documented forty-two incidents of non-compliance by Publix. (*See id.* ¶ 81).

In light of the motto at Publix, "Where shopping is a pleasure," Hernandez voiced his complaints to Cendoya. (*Id.* ¶¶ 73–74). Instead of being commended for his actions, Hernandez suffered retaliation, resulting in ridicule, financial loss, emotional distress, and mental anguish. (*See id.* ¶ 75). On April 26, 2013, Hernandez filed a claim for discrimination and wrongful termination with the U.S. Equal Employment Opportunity Commission. (*See id.* ¶ 82).

Hernandez's Complaint states four state-law claims for relief. Count I alleges Publix violated the Florida Whistleblower Act ("FWA"), Florida Statute section 448.104. (*See id.* 11–12). Count II alleges tortious interference with advantageous business relationship against Cendoya. (*See id.* 13–14). Counts III and IV, against Publix and Cendoya respectively, allege the Defendants intentionally caused Hernandez to suffer emotional distress. (*See id.* 14–16). While the action was pending in state court, Publix filed its Answer and Affirmative Defenses to Count I of the Complaint, moved to dismiss Count III, and propounded discovery.

Cendoya was served on January 9, 2014 and removed the action on February 7, 2014 (*see* Notice of Removal [ECF No. 1]). On February 20, 2014, Cendoya filed his Removal Status Report [ECF No. 6] containing Publix's Statement of Consent to Removal [ECF No. 6-1]. In the Removal Status Report, Cendoya explains removal "is based on the fact that an essential element to proving Plaintiff's state law claims requires a determination that federal statutes and regulations were violated." (*Id.* 1). Hernandez timely filed his Motion to Remand.

## II. STANDARD

Under 28 U.S.C. section 1447(c), a case removed from state court should be remanded if it appears that it was removed improvidently. The burden of establishing federal jurisdiction by a preponderance of the evidence falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Accept. Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). Courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). When the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Defendants assert federal jurisdiction exists under 28 U.S.C. section 1331 because establishing violations of the federal laws cited in the Complaint "is essential to proving Plaintiff's state-law claims." (Cendoya's Opp'n 4). To have federal subject matter jurisdiction pursuant to section 1331, the causes of action must "aris[e] under the . . . laws . . . of the United States." 28 U.S.C. section 1331 (alterations added). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Importantly, the existence of a federal question in a state law cause of action does not automatically confer federal question jurisdiction, for "to support removal, the complaint must substantially involve a dispute over the validity, effect, or construction of federal law." *Cotromano v. United Techs. Corp.*, No. 13-80929-CIV-Ryskamp/Hopkins, 2014 WL 1259629,

at *1 (S.D. Fla. Mar. 24, 2014) (citing *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004)).

Thus, to determine whether there is federal subject matter jurisdiction, the Court must evaluate whether the state-law claims "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[.]'" *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) (alteration added) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

### III. DISCUSSION

Hernandez opposes removal, insisting the case does not involve a substantial federal claim requiring resolution by the Court. (*See* Mot. 3). He argues Cendoya, against whom no federal claim is stated nor even one that remotely implicates federal food safety, is trying to recast common law claims for tortious interference and intentional infliction of emotional distress as federal claims in an effort to invoke the Court's jurisdiction. (*See id.*; *see also id.* 9–10). According to Hernandez, the only claim that remotely concerns federal law and for which the Complaint admittedly cites federal statutes, the *Florida* Whistleblower Act claim against Publix, does not require the interpretation of federal statutes, as proof of an actual violation of federal law is not an element of that state-law cause of action, nor is federal law the only law Publix allegedly violated. (*See id.* 7–8).

Cendoya and Publix argue the case "arises under" the laws of the United States because it raises issues of disputed and substantial federal law. (*See* Publix Opp'n 3). Defendants argue the FWA claim requires the interpretation and application of federal law, for proof of an actual violation of a statute or regulation is essential to Hernandez's ability to show he engaged in

7

Case 1:14-cv-20491-CMA Document 25 Entered on FLSD Docket 04/09/2014 Page 8 of 11

CASE NO. 14-20491-CIV-ALTONAGA

protected activity under the FWA. (*See generally id.*; Cendoya Opp'n 6–8). Cendoya also asserts the two state law claims stated against him are predicated on whether federal statutes were violated and the scope of those violations. (*See* Cendoya Opp'n 5, 8–10). For the reasons explained below, Defendants' arguments wholly fail to persuade subject matter jurisdiction exists.

First, as to the FWA claim, Hernandez does not have to prove an actual violation of the federal statutes and regulations referenced in the Complaint. To state a prima facie case under the FWA, Hernandez will have to show: (1) he objected to or refused to participate in an illegal activity, policy, or practice; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal. *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (citation omitted). Once the prima facie case is established, Publix must offer a legitimate, non-retaliatory reason for the adverse action, and thereafter Hernandez must prove by a preponderance of the evidence the reason is pretextual and retaliatory. *See id.* (citation omitted). In satisfying the first prong of his FWA claim, Hernandez is only required to show he had a "'good faith, objectively reasonable belief that h[is] activity [wa]s protected by the statute.'" *Id.* (alterations added) (quoting *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008)); *see also Padron v. BellSouth Telecomms., Inc.*, 196 F. Supp. 2d 1250, 1255 (S.D. Fla. 2002) ("Statutorily protected participation is established if Plaintiff can show that she opposed an unlawful employment practice which she reasonably believed had occurred." (citation omitted)).

Certainly other courts have required proof of an actual violation of law in order for a plaintiff to state a FWA claim. *See, e.g., White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005) (stating the FWA contains "no qualification" "to permit shelter for the

employee who reasonably believes she is being asked to engage in illegal activity"); *Charlton v. Republic Svcs. of Fla., L.P.*, No. 09-22506-CIV, 2010 WL 2232677, *3 (S.D. Fla. June 2, 2010) (citing cases). But, as noted by Hernandez, *Aery* is the only Florida intermediate appellate court to have addressed the standard of proof in a FWA claim. As a federal court applying state law, the Court is "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, No. 12-14527, 2014 WL 842949, at *5 (11th Cir. Mar. 5, 2014) (internal quotation marks omitted) (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985)); *see also Doyle v. Volkswagenwerk Aktiengelellschaft*, 81 F.3d 139, 142–43 (11th Cir. 1996). Furthermore, the Supreme Court of Florida has held that "decisions of district courts of appeal represent the law of Florida unless and until they are overruled by this Court." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (citation omitted). No persuasive authority has been cited that the Florida Supreme Court would decide this issue differently than the court did in *Aery*.

Even if Hernandez was required to prove an actual violation of federal law, several additional reasons compel a finding that federal law is not so implicated that subject matter jurisdiction exists. The Complaint identifies violations of federal food safety laws *as well as* Florida food safety regulations. (*See* Compl. ¶¶ 11–28). As Hernandez asserts, to prevail on his FWA claim, he need only establish Publix violated state statutes. As such, federal law is not an essential element of Plaintiff's claim under the FWA. *See Escala v. Victoria's Secret Stores, LLC*, 727 F. Supp. 2d 1350, 1353 (S.D. Fla. 2009). It also does not appear that Defendants dispute what the cited federal laws and regulations state or require; hence, there is no "stated federal issue, actually disputed and substantial" on the face of the Complaint this federal forum

should entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities. *Grable*, 545 U.S. at 314.

Last, the case suffers from similar fact-dependent and state-law dependent issues addressed in then-Magistrate Judge Robin Rosenbaum's Report and Recommendation in *Kanfer v. WellCare of Florida, Inc.*, No. 09-81587-Civ-Zloch/Rosenbaum (Mar. 6, 2010), supplied by Hernandez [ECF No. 7-2]. As in *Kanfer*, resolution of Hernandez's FWA claim

> may well require the presiding court to determine whether the FWA requires a plaintiff to establish an actual violation of the law by the employer or whether a good-faith reasonable belief or some other formulation will suffice. Similarly, the presiding court may have to determine whether, even if subsequent agency guidance has demonstrated that an act violates federal law, if the illegality of the act was not clear at the time that the employer engaged in it, such conduct can satisfy the FWA's requirement that a plaintiff show that his employer took action against him in retaliation for the employee's refusing to commit an act in violation of law. The presence of these issues in this case demonstrates that this matter primarily involves and turns upon construction of state law, not federal law. Thus, the appropriate federal-state court balance dictates that this matter should be resolved by a state court, not a federal one. In short, this case does not fall into the "slim category" of cases where "arising under" jurisdiction can apply, despite the fact that the cause of action pled is not a federal one.

*Id.* 16–17 (citation omitted).

The state-law tortious interference and intentional infliction of emotional distress tort claims asserted against Cendoya implicate federal subject matter jurisdiction even less than does the FWA claim. No further discussion of these is warranted.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand **[ECF No. 5]** is **GRANTED**. The Clerk of Court is instructed to remand this case to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.[3]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of April, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[3] Plaintiff does not request an award of attorney's fees and costs incurred in seeking remand pursuant to 28 U.S.C. section 1447(c), but should he consider doing so upon receipt of this Order the Court notes "[a]bsent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Cappello v. Carnival Corp.*, No. 12-22181-CIV, 2012 WL 3759026, at *1 (S.D. Fla. Aug. 29, 2012) (alterations added; citation and internal quotation marks omitted). Defendants' failure to persuade the Court that the Complaint presents "arising under" jurisdiction does not rise to the level of objective unreasonableness, nor does it warrant the Court's exercise of discretion in favor of awarding fees and costs to Plaintiff.